ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ (147029)
LUKE O. BROOKS (212802)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
lukeb@rgrdlaw.com

KESSLER TOPAZ MELTZER
  & CHECK, LLP
NAUMON A. AMJED
RYAN T. DEGNAN
CHRISTOPHER A. REESE
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610/667-7706
610/667-7056 (fax)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREY CAMP, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED, STEVEN M. MOLLENKOPF and GEORGE S. DAVIS,<br><br>    Defendants. | Case No. **'18CV1208 AJB BLM**<br><br><u>CLASS ACTION</u><br><br><u>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS</u><br><br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Carey Camp ("plaintiff"), individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by QUALCOMM Incorporated ("QUALCOMM" or the "Company"), as well as conference call transcripts and media and analyst reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a federal class action on behalf of all persons who purchased QUALCOMM securities between January 31, 2018 and March 12, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") against QUALCOMM and certain of its senior officers (collectively, "defendants").

2. QUALCOMM develops and commercializes "foundational technologies and products used in mobile devices and other wireless products." According to the Company's Annual Report on Form 10-K, filed with the SEC on November 1, 2017, QUALCOMM is "a pioneer in 3G (third generation) and 4G (fourth generation) wireless technologies, and [is] a leader in 5G (fifth generation) wireless technologies to empower a new era of intelligent, connected devices." The Company derives revenues principally from the sale of integrated circuit products and the licensing of intellectual property.

3. Broadcom Limited ("Broadcom") is a designer, developer and global supplier of a broad range of semiconductor devices, with a focus on complex digital and mixed signal complementary metal oxide semiconductor ("CMOS") based devices and analog III-V based products. Broadcom is incorporated, and maintains its principal executive offices, in Singapore. Beginning in November 2017, Broadcom

announced a series of unsolicited proposals to acquire all of the outstanding shares of QUALCOMM's common stock.

4. The Committee on Foreign Investment in the United States ("CFIUS") is "an inter-agency committee authorized to review transactions that could result in control of a U.S. business by a foreign person ('covered transactions'), in order to determine the effect of such transactions on the national security of the United States."[1]

5. Unbeknownst and undisclosed to investors, on January 29, 2018, QUALCOMM secretly filed a voluntary request for CFIUS to initiate an investigation into Broadcom's actions in a brazen attempt to frustrate Broadcom's attempt to acquire the Company and for the Individual Defendants (defined below) to simultaneously entrench themselves in their executive leadership positions at QUALCOMM. Once the Company's unilateral secret action was revealed to the market on March 5, 2018, and as the market continued to learn additional information about the nature and extent of QUALCOMM's secret action vis-à-vis CFIUS, and the ramifications therefrom, the price of the Company's common stock declined substantially.

6. The complaint alleges that, throughout the Class Period, defendants made materially false and misleading statements and failed to disclose to investors that QUALCOMM had secretly filed a unilateral notice with CFIUS in order to frustrate Broadcom's attempt to acquire the Company. This information was material to purchasers of the Company's securities during the Class Period.

7. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, plaintiff and other members of the Class (defined below) suffered damages.

---

[1] U.S. Department of the Treasury, Resource Center, *The Committee on Foreign Investment in the United States (CFIUS)*, https://www.treasury.gov/resource-center/international/Pages/Committee-on-Foreign-Investment-in-US.aspx.

**JURISDICTION AND VENUE**

8. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

10. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. Additionally, QUALCOMM's principal executive offices are located within this District.

11. In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce.

**PARTIES**

12. Plaintiff Carey Camp, as set forth in the accompanying certification, incorporated by reference herein, purchased QUALCOMM securities at artificially inflated prices during the Class Period and has been damaged thereby.

13. Defendant QUALCOMM is a Delaware corporation with its principal executive offices located at 5775 Morehouse Drive, San Diego, California.

14. Defendant Steven M. Mollenkopf ("Mollenkopf") was, at all relevant times, the Company's Chief Executive Officer ("CEO") and a member of the Board of Directors.

15. Defendant George S. Davis ("Davis") was, at all relevant times, the Company's Chief Financial Officer ("CFO").

16. Defendants Mollenkopf and Davis are collectively referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of

QUALCOMM's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.

## SUBSTANTIVE ALLEGATIONS

**Background**

17. QUALCOMM develops and commercializes "foundational technologies and products" used in mobile devices and other wireless products. According to the Company's Annual Report Form 10-K, filed with the SEC on November 1, 2017, QUALCOMM is "a pioneer in 3G (third generation) and 4G (fourth generation) wireless technologies, and [is] a leader in 5G (fifth generation) wireless technologies to empower a new era of intelligent, connected devices." The Company derives revenues principally from the sale of integrated circuit products and the licensing of intellectual property.

18. Broadcom is a designer, developer and global supplier of a broad range of semiconductor devices, with a focus on complex digital and mixed signal CMOS based devices and analog III-V based products. Broadcom is incorporated, and maintains its principal executive offices, in Singapore. Beginning in late 2017, Broadcom announced a series of unsolicited proposals to acquire all of the outstanding shares of QUALCOMM's common stock.

19. In order to frustrate Broadcom's attempt to acquire the Company, QUALCOMM and the Individual Defendants issued materially false and misleading statements and failed to disclose material facts to investors.

**Materially False and Misleading Statements Issued During the Class Period**

20. On January 31, 2018, QUALCOMM filed a Quarterly Report on Form 10-Q (for the period ended December 24, 2017) with the SEC (the "Form 10-Q"). With respect to Broadcom, and Broadcom's attempted acquisition of QUALCOMM, the Form 10-Q stated:

- On November 6, 2017, Broadcom Limited (Broadcom) announced an unsolicited proposal (the Proposed Transaction) to acquire all of the outstanding shares of our common stock for per share consideration of $70.00, consisting of $60.00 in cash and $10.00 in Broadcom shares. On November 12, 2017, following a comprehensive review conducted in consultation with financial and legal advisors, our Board of Directors unanimously rejected the Proposed Transaction, concluding that it dramatically undervalues the Company. Following our announcement on November 13, 2017, Broadcom announced that it remains fully committed to pursuing its acquisition of Qualcomm for the consideration offered on November 6, 2017. Additionally, on December 11, 2017, Broadcom filed preliminary proxy materials with the Securities and Exchange Commission in connection with its planned solicitation of proxies to elect 11 nominees to our Board of Directors at our 2018 Annual Meeting of Stockholders to be held on March 6, 2018. On December 22, 2017, we announced that our Board of Directors, following the recommendation of the Board's Governance Committee, unanimously determined not to nominate any of the 11 candidates assembled by Broadcom to replace our current directors. Responding to the Proposed Transaction has required, and may continue to require, that we devote significant resources and management time and attention and incur additional expenses and costs.

21. The Form 10-Q also contained the following two "risk factors" regarding QUALCOMM and Broadcom:

*We are subject to a disruptive takeover proposal.*

Broadcom Limited has made an unsolicited proposal to acquire all of our outstanding common stock and has commenced a proxy contest to replace our Board of Directors with Broadcom nominees. Responding to Broadcom's unsolicited proposal and proxy contest may divert management attention and may require us to incur significant costs. Moreover, the hostile and unsolicited nature of Broadcom's actions may disrupt our business and operations by causing uncertainty among and

potentially loss of current and prospective employees, customers, licensees, suppliers and other constituencies important to our success, which could negatively impact our business and financial results. The price of our common stock may be volatile and could be subject to price fluctuations due to the uncertainty associated with the unsolicited offer and proxy contest.

\*   \*   \*

***We may not be able to attract and retain qualified employees.***

Our future success depends largely upon the continued service of our executive officers and other key management and technical personnel, and on our ability to continue to identify, attract, retain and motivate them, which may become increasingly difficult given the uncertainty created by Broadcom's unsolicited bid to acquire the Company and in an environment of cost reductions. Implementing our business strategy requires specialized engineering and other talent, as our revenues are highly dependent on technological and product innovations. The market for employees in our industry is extremely competitive. Further, existing immigration laws make it more difficult for us to recruit and retain highly skilled foreign national graduates of universities in the United States, making the pool of available talent even smaller. If we are unable to attract and retain qualified employees, our business may be harmed.

22. The Form 10-Q was materially false and misleading at the time it was issued because, among other things, it failed to disclose or indicate to investors that the Company had secretly filed a unilateral notice with CFIUS in order to frustrate Broadcom's attempt to acquire the Company. This information was material to purchasers of the Company's securities during the Class Period.

**The Truth Begins to Emerge**

23. On March 5, 2018, Broadcom issued a press release entitled "Broadcom Disappointed Will of Qualcomm Stockholders to be Deferred." That press release disclosed QUALCOMM's secret actions with respect to CFIUS as follows:

Broadcom was informed on Sunday night that ***on January 29, 2018, Qualcomm secretly filed a voluntary request with CFIUS to initiate an investigation***, resulting in a delay of Qualcomm's Annual Meeting 48 hours before it was to take place. ***This was a blatant, desperate act by Qualcomm*** to entrench its incumbent board of directors and prevent its own stockholders from voting for Broadcom's independent director nominees.

It is critical that Qualcomm stockholders know that Qualcomm did not once mention submitting a voluntary notice to CFIUS in any of its interactions with Broadcom to date, including in the two meetings on

- 6 -

February 14, 2018 and on February 23, 2018. ***This can only be seen as an intentional lack of disclosure – both to Broadcom and to its own stockholders***. This brings Qualcomm's "engagement theater" to a new low.[2]

24. Also on March 5, 2018, QUALCOMM filed a Current Report on Form 8-K with the SEC disclosing that it had "received an Interim Order" from CFIUS (the "March 4, 2018 Interim Order"). A copy of the March 4, 2018 Interim Order was attached to the Form 8-K as Exhibit No. 99.1. Among other things, the March 4, 2018 Interim Order directed the following:

> 1.1 Qualcomm's annual stockholder meeting, including the election of its Board of Directors, shall be delayed from its current scheduled date of March 6, 2018, for a period of 30 (thirty) days. Qualcomm shall hold in abeyance the acceptance or count of any votes or proxies for directors, and shall take no action to complete the election of directors.
>
> 1.2 Qualcomm and Qualcomm's Board of Directors, executives, and agents are, while this Order is in effect, hereby prohibited from accepting, or taking any action in furtherance of accepting, Broadcom's proposed merger agreement or any other proposed merger, acquisition, or takeover agreement with Broadcom.

25. Following this news, the price of the Company's common stock declined $0.73 per share, or 1.13%, to close at $64.01 per share on March 5, 2018.

26. On March 6, 2018, QUALCOMM filed a Current Report on Form 8-K with the SEC disclosing that it had (i) "received a letter, addressed to both Broadcom Limited and Qualcomm, from the U.S. Department of Treasury" (the "March 5, 2018 Letter"); and (ii) "received a Modification of Interim Order" from CFIUS (the "Modification of Interim Order"). Copies of the March 5, 2018 Letter and the Modification of Interim Order were attached to the Current Report on Form 8-K as Exhibits.

27. The March 5, 2018 Letter shed further light on QUALCOMM's undisclosed secret actions, and the resulting impact of such actions, as follows:

> ***On January 29, 2018, Qualcomm Incorporated ("Qualcomm") filed a unilateral notice with the Committee on Foreign Investment in***

---

[2] All emphasis is added unless otherwise indicated.

- 7 -

*the United States ("CFIUS")*, seeking review of Broadcom Limited's ("Broadcom") solicitation of proxies for the purposes of electing a majority of the directors of Qualcomm. On March 4, 2018, the U.S. Department of Treasury ("Treasury") filed an agency notice pursuant to 31 C.F.R. §800.401(c) broadening the scope of review to cover the proposed hostile takeover of Qualcomm.

During the time between ***Qualcomm's unilateral filing*** and Treasury's agency filing, CFIUS has been communicating with both parties to obtain additional information to inform its decision on the appropriate path forward in regards to this matter. It was during this time, and as a result of these communications and additional information, that CFIUS has come to believe that Broadcom's successful hostile attempt of Qualcomm, including the related stock purchase, proxy contest for the election of six directors to Qualcomm's Board as proposed and selected by Broadcom, Proposed Agreement and Plan of Merger, and any other potential merger between Broadcom and Qualcomm, could pose a risk to the national security of the United States.

***CFIUS's assessment thus far includes its review of the information submitted by Qualcomm in its unilateral voluntary notice on January 29, 2018***, the parties' responses to questions posed about the potential transaction during the interim period, and the information provided in our multiple phone calls, emails, and meetings with representatives of both Qualcomm and Broadcom.

\*   \*   \*

*Interim Order*

As outlined above, CFIUS believes that this transaction could pose a risk to the national security of the United States. CFIUS has determined that the interim measures described in the Interim Order shared with you earlier are necessary to mitigate the national security risks discussed above arising from and in connection with the proposed transaction. Moreover, CFIUS has determined that these interim measures are necessary to provide CFIUS adequate opportunity to further investigate the proposed transaction and evaluate and assess the associated national security risk.

28. Among other things, the Modification of Interim Order modified the March 4, 2018 Interim Order issued by CFIUS to include the following sentence: "Upon opening its annual stockholder meeting on March 6, 2018, Qualcomm shall immediately adjourn the meeting for a period of thirty (30) days without taking action on any substantive matters, including the election of its Board of Directors."

- 8 -

29. Following this additional news, the price of the Company's common stock declined an additional $1.87 per share, or 2.92%, to close at $62.14 per share on March 6, 2018.

30. On March 12, 2018, QUALCOMM filed a Current Report on Form 8-K with the SEC disclosing that it had "received a letter, addressed to both Broadcom Limited and Qualcomm, from the U.S. Department of Treasury" the previous day (the "March 11, 2018 Letter"). A copy of the March 11, 2018 Letter was attached to the Form 8-K filing as Exhibit No. 99.1, and stated, in relevant part:

> The purpose of this letter is to inform the parties of the status of the investigation being conducted by [CFIUS] . . . .
>
> Through [the] March 5, 2018 letter, CFIUS informed you that it had identified potential national security concerns that warrant a full investigation of the attempted hostile takeover by Broadcom Limited ("Broadcom") of Qualcomm Incorporated ("Qualcomm"), through a stock purchase, proxy contest, and Proposed Agreement and Plan of Merger (the "Proposed Agreement") or other merger. ***That determination was based on CFIUS's review of the information submitted by Qualcomm in its unilateral voluntary notice on January 29, 2018***, the parties' responses to questions posed about the potential transaction during the interim period, and the information provided in our multiple phone calls, emails, and meeting with representatives of both Qualcomm and Broadcom.
>
> \* \* \*
>
> Since transmitting the letter to you on March 5, 2018 CFIUS has conducted an investigation of the transaction and its associated national security risk. That investigation has so far confirmed the national security concern that CFIUS identified to you in its letter on March 5, 2018. That investigation is expected to close soon. In light of the actions that Broadcom has taken in violation of the Interim Order to shorten the time period for CFIUS investigation, CFIUS requests that Broadcom provide any information responsive to the March 5 2018 letter as soon as possible. In the absence of information that changes CFIUS's assessment of the national security risks posed by this transaction, CFIUS would consider taking further action, including but not limited to referring the transaction to the President for decision.

31. Later on March 12, 2018, after the market had closed, President Donald J. Trump issued an order blocking Broadcom from taking further action regarding its proposed acquisition of QUALCOMM. As reported by *Bloomberg*:

> President Donald Trump issued an executive order Monday blocking Broadcom Ltd. from pursuing its hostile takeover of Qualcomm

>Inc., scuttling a $117 billion deal that had been scrutinized by a secretive panel over the tie-up's threat to U.S. national security.
>
>Trump acted on a recommendation by the Committee on Foreign Investment in the U.S., which reviews acquisitions of American firms by foreign investors.
>
>\* \* \*
>
>The order marked an unprecedented move by the White House to stop a hostile bid for a company. Broadcom didn't have an agreement to buy San Diego-based Qualcomm. It was fighting to win support from Qualcomm shareholders to gain control of its rival's board and move forward with its offer. ***Before waiting for an actual deal, CFIUS opened an investigation*** to review the risks to national security.

32. Following this development, the price of the Company's common stock declined an additional $3.11 per share, or 4.95%, to close at $59.70 per share on March 13, 2018.

33. On March 14, 2018, Broadcom announced that it had withdrawn and terminated its offer to acquire QUALCOMM.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased QUALCOMM securities during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the directors and officers of QUALCOMM, members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. According to the Company's Form 10-Q filed with the SEC on January 31, 2018, QUALCOMM had over 1.4 billion shares of common stock outstanding as of January 29, 2018, owned by thousands of persons.

36. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the

Class that predominate over questions that may affect individual Class members include:

      (a)    Whether the Exchange Act was violated by defendants;

      (b)    Whether defendants omitted and/or misrepresented material facts;

      (c)    Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

      (d)    Whether defendants knew or recklessly disregarded that their statements were false and misleading;

      (e)    Whether the prices of QUALCOMM securities were artificially inflated; and

      (f)    The extent of damage sustained by Class members and the appropriate measure of damages.

37. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

38. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**LOSS CAUSATION/ECONOMIC LOSS**

40. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by plaintiff and the Class. The price of QUALCOMM's securities declined significantly when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. As a result of their purchases of QUALCOMM securities during the Class Period, plaintiff

and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## SCIENTER ALLEGATIONS

41. During the Class Period, defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made or acted in reckless disregard of the true information known to them at the time. In so doing, defendants participated in a scheme to defraud and committed acts, practices and participated in a course of business that operated as a fraud or deceit on purchasers of QUALCOMM securities during the Class Period.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

42. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) The omissions and misrepresentations were material;

(c) The Company's securities traded in an efficient market;

(d) The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e) Plaintiff and other members of the Class purchased QUALCOMM securities between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

43. At all relevant times, the market for QUALCOMM securities was efficient for the following reasons, among others: (1) as a regulated issuer, QUALCOMM filed periodic public reports with the SEC; and (2) QUALCOMM regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on major news

wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## COUNT I

### Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the Class Period, QUALCOMM and the Individual Defendants carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Class to purchase QUALCOMM securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, these defendants, and each of them, took the actions set forth herein.

46. QUALCOMM and the Individual Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (3) engaged in acts, practices and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for QUALCOMM securities in violation of §10(b) of the Exchange Act and Rule 10b-5. Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons.

## COUNT II

### Violation of §20(a) of the Exchange Act Against the Individual Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

- 13 -

48. The Individual Defendants acted as controlling persons of QUALCOMM within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

50. As set forth above, QUALCOMM and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages and equitable relief in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  June 8, 2018

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
LUKE O. BROOKS

*s/ Spencer A. Burkholz*
SPENCER A. BURKHOLZ

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

KESSLER TOPAZ MELTZER
  & CHECK, LLP
NAUMON A. AMJED
RYAN T. DEGNAN
CHRISTOPHER A. REESE
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)

Attorneys for Plaintiff

I:\Admin\CptDraft\Securities\Cpt Qualcomm 18.docx

## CERTIFICATION

I, Carey Camp ("Plaintiff"), declare that:

1. Plaintiff has reviewed the Complaint, and authorizes its filing.

2. Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is not dependent upon execution of this Certification.

4. Plaintiff's Class Period purchase and sale transaction(s) in **QUALCOMM Incorporated** securities that are the subject of this action are attached in Schedule A. Plaintiff has complete authority to bring a suit to recover for investment losses for all securities set forth in Schedule A.

5. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

Plaintiff declares under penalty of perjury that the foregoing is true and correct.

Executed this date: __6/5/2018__

_____
Carey Camp

## SCHEDULE A

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Com Stk | Buy | 2/9/2018 | 800 | $64.19 |