# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Carey Camp, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Qualcomm Inc., Steven K. Mollenkopf, and George S. Davis,<br><br>Defendants. | Case No.: 18-cv-1208-AJB-BLM<br><br>**ORDER:**<br><br>**GRANTING IN PART AND DENIES IN PART DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**(Doc. No. 57)** |

Pending before the Court is Defendants' motion to dismiss the consolidated amended class action complaint. (Doc. No. 57.) Plaintiff opposes the motion. (Doc. No. 63.) For the reasons set forth more fully below, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss.

## I.   BACKGROUND

Plaintiff represents a class of those who purchased Qualcomm stock between January 31, 2018, and March 12, 2018 and who are suing under the Securities Exchange Act of 1934. (Doc. No. 50 at 4.) Qualcomm is a United States wireless technology company that manufactures chips and other technologies for mobile devices. (*Id.* ¶¶ 34, 41.) In early November 2017, Singapore chipmaker Broadcom offered to acquire Qualcomm for $105 billion, or $70 per share. (*Id.* ¶¶ 51, 58, 64.)

Plaintiffs allege that on January 29, 2018, Qualcomm "secretly filed a voluntary request" for The Committee on Foreign Investment in the United States ("CFIUS") to investigate Broadcom Limited. (*Id.* ¶ 24.) CFIUS is a federal interagency committee that reviews certain investments in United States business to determine whether such transactions threaten to impair national security. (*Id.* ¶ 99.) It makes recommendations regarding such transactions for the President's ultimate determination. (*Id.*) "Typically a CFIUS review of a transaction begins when the parties to a transaction jointly file a 'voluntary notice' notifying CFIUS of the transaction, and usually after the parties have come to an agreement on the terms." (*Id.* ¶ 101.) Once a CFIUS review is initiated, the panel has 30 days to clear a transaction or open an investigation, which extends the deadline by 45 days. (*Id.* ¶¶ 102–04.) If CFIUS makes a recommendation to block the transaction, the President has 15 days to act. (*Id.* ¶ 106.)

On November 12, 2017, Qualcomm rejected Broadcom's unsolicited initial bid. (*Id.* ¶ 63.) Broadcom responded by mounting a hostile takeover. (*Id.* ¶¶ 71–72.) On December 4, 2017, Broadcom launched a proxy fight. (*Id.* ¶ 71.) On December 6, 2017, Broadcom announced that it had initiated a process to redomicile in the United States. (*Id.* ¶ 75.) On January 29, 2018, Defendants filed a unilateral voluntary notice requesting that CFIUS review Broadcom's offer. (*Id.* ¶ 92.)

As alleged, Defendants emphasized value and antitrust concerns as reasons that investors should vote against Broadcom's directors. (*Id.* ¶¶ 196, 199, 200, 202, 210.) Defendants maintained that they were engaged in meaningful negotiations with Broadcom. (*Id.* ¶¶ 200, 208, 225, 227.)

On February 26, 2018, Reuters confirmed that CFIUS was looking at the deal and had been in touch with at least one of the companies and that lawmakers were pressuring the White House to review the transaction before the stockholder vote on March 6, 2018. (*Id.* ¶ 163.) On March 4, 2018, two days before Qualcomm's shareholder meeting, CFIUS ordered Qualcomm to postpone its director elections by 30 days so CFIUS could conduct a full investigation. (*Id.* ¶ 169.) Following this announcement, Qualcomm's stock price

declined 4.02%. (*Id.* ¶ 178.) On March 12, 2018, CFIUS released a letter explaining that its initial determination was based on "the information submitted by Qualcomm in its unilateral voluntary notice on January 29, 2018," responses to questions and information provided by both Qualcomm and Broadcom and further investigation could include referral to the President for decision. (*Id.* ¶ 253.) In an executive order dated March 12, 2018, the President blocked Broadcom's attempted takeover. (*Id.* ¶ 181.) Following the news, Qualcomm's stock price dropped 4.95%. (*Id.* ¶ 256.)

The instant action was filed on June 8, 2018. On March 8, 2019, Plaintiffs filed the Amended Complaint that names Qualcomm and Defendants Mollenkopf, Rosenberg, Jacobs, and Horton, and asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. (*See generally* Doc. No. 50.)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### III. DISCUSSION

**A.     Defendants' Request for Judicial Notice**

Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendants' seek judicial notice of the following documents: (A) Excerpt from Qualcomm's Definitive Proxy Statement filed on Schedule 14A with the SEC on January 5, 2018; (B) Qualcomm's Additional Definitive Proxy Soliciting Materials filed on Schedule 14A with the SEC on January 16, 2018; (C) Qualcomm's Press Release filed on Schedule 14A with the SEC on January 23, 2018; (D) Interim Order dated March 4, 2018 from the Committee on Foreign Investment in the United States filed by Qualcomm with the SEC on March 5, 2018; (E) Letter dated March 5, 2018 from the Committee on Foreign Investment in the United States filed by Qualcomm with the SEC on March 5, 2018; (F) Letter dated March 11, 2018 from the U.S. Department of Treasury filed by Qualcomm with the SEC on March 12, 2018; (G) Order of President of the United States of America regarding the Proposed Takeover of Qualcomm Incorporated by Broadcom Limited dated March 12, 2018 filed by Qualcomm with the SEC on March 13, 2018; (H) Article by the New York Times dated November 4, 2017 titled "Chip Maker Broadcom Said to Mull a Bid for Qualcomm"; (I) Article by the New York Times dated November 6, 2017 titled "Broadcom Targets Qualcomm in Largest-Ever Tech Deal"; (J) Article by Reuters dated February 26, 2018 titled "Exclusive: Secretive U.S. Security Panel Discussing Broadcom's Qualcomm Bid-Sources"; (K) historical stock price data for Qualcomm from January 29, 2018 through March 13, 2018 published by Yahoo! Finance at https://finance.yahoo.com; and (L) historical stock price data for Qualcomm from April 1, 2019 through May 9, 2019 published by Yahoo! Finance at https://finance.yahoo.com. (*See generally* Doc. No. 57-

15.)

Exhibits A-J are each paraphrased or quoted in the Complaint and/or forms the basis for Plaintiffs' claims. A defendant may seek to incorporate a document into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Accordingly, Exhibits A-J are incorporated by reference.

Further, Exhibits A-L also may be judicially noticed. Courts may take judicial notice of SEC filings and news articles. *See, e.g., Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008); *Wilson v. Edison Int'l, Inc.*, No. LA CV15-09139 JAK (PJWx), 2016 WL 7469601, at *6 (C. D. Cal. July 6, 2016); *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 979–80 (N.D. Cal. 2010). Further, Courts may also take judicial notice of official government documents and historic stock prices of publicly traded companies as the information is subject to accurate and ready determination from sources whose accuracy cannot reasonably be questioned. *See Metzler*, 540 F.3d at 1064 & n.7; *Hague v. Wells Fargo Bank, N.A.*, No. C11-02366 TEH, 2011 WL 3360026, at *1 (N.D. Cal. Aug. 2, 2011).

Based on the foregoing, the Court **GRANTS** Defendants' request for judicial notice.

**B.     Defendants' Motion to Dismiss**

Defendants assert that Plaintiffs fail to state a claim under Section 10(b) since Plaintiffs fail to identify any actionable misstatement or omission, fail to adequately plead scienter, and fail to adequately plead loss causation. (*See generally* Doc. No. 57-1.) Further, Defendants argue that Plaintiffs have failed to state a claim under Section 20(a). (*See generally id.*)

Section 10(b) of the Exchange Act forbids: (1) the use or employment of any deceptive device, (2) in connection with the purchase or sale of any security, and (3) in contravention of Securities and Exchange Commission rules and regulations. 15 U.S.C. § 78j(b); *see Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005). Additionally, Rule 10b–5, promulgated by the SEC under Section 10(b), forbids the making of any

"untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made not misleading." 17 C.F.R. § 240.10b–5; *see Dura*, 544 U.S. at 341. To succeed in a private civil action under Section 10(b) and Rule 10b–5, a plaintiff must establish "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance ...; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Dura*, 544 U.S. at 341–42.

### i. Manner of Pleading

Plaintiffs' complaint contains a designated section entitled "Defendants' Materially False and Misleading Statements and Omissions of Material Fact." (Doc. No. 50 at 64.) While the Court notes that Plaintiffs' complaint does contain large block quotes, Plaintiffs' complaint does single out the actual statements that are the basis of Plaintiffs' securities fraud claim. *See Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013); *Lifschitz v. NextWave Wireless Inc.*, No. 08CV1697-LAB (WMC), 2010 WL 11512356, at *3 (S. D. Cal. Mar. 5, 2010); *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1100 (N.D. Cal. 2006).

### ii. Not Actionable Statements

Defendants assert that the alleged misstatements on February 16, 20, 22, 26, and March 1 may be disregarded as they are after Plaintiffs last acquired stock. (Doc. No. 57-1 at 20.) "A cause of action under section 10(b) applies only to misrepresentations or omissions made 'in connection with the purchase or sale of any security.'" *Binder v. Gillespie*, 184 F.3d 1059, 1066 (9th Cir. 1999) (quoting 15 U.S.C. § 78k(b)). "Statements issued after a plaintiff's purchase of stock cannot form the basis of a Section 10(b) or Rule 10b-5 claim because the statements could not have affected the plaintiff's decision to purchase stock." *Kelly v. Electronic Arts, Inc.*, 71 F. Supp. 3d 1061, 1069 (N.D. Cal. 2014) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 501 (9th Cir. 1992)).

Plaintiffs contend that at the pleading stage, a class period in securities class actions "is not confined to that period preceding [plaintiff's] final purchase of [company] stock;

carving out such a period would be arbitrary." *Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991); *see also Nicholas v. Poughkeepsie Sav. Bank/FSB*, No. 90 CIV 1607 (RWS), 90 CIV 1607 (RWS), 1990 WL 145154, at *5 (S.D.N.Y. Sept. 27, 1990) ("Post-purchase statements are relevant to the course of wrongful conduct alleged by a plaintiff in a securities action and [plaintiff] has sued on behalf of the Class of persons who purchased stock during the entire Class Period.") "[O]nce the general standing requirement is satisfied, any additional questions related to particular injuries are relevant only in the context of class certification under Federal Rule of Civil Procedure 23." *In re Connectics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1004 (N.D. Cal. 2008); *see also In re VeriSign, Inc.*, No. C 02-02270 JW (PVT), 2005 WL 88969, at *4 (N.D. Cal. Jan. 13, 2005) ("Simply because certain class members were injured by misrepresentations that came after the Lead Plaintiffs had already acquired VeriSign stock does not mean that the Lead Plaintiffs cannot represent the class.")

The Court agrees with Defendants that these statements are not actionable. The cases cited by Plaintiffs address challenges to investors' standing under Article III, whereas here Defendants are asserting that these statements as pled are not actionable. The Ninth Circuit has held that actionable statements are limited to those made before the plaintiff purchased the relevant stock. *See Hannon*, 976 F.2d at 501. Accordingly, the statements made on February 16, 20, 22, 26, and March 1 are disregarded as they are after Plaintiffs last acquired stock.

Thus, the Court **GRANTS** Defendants' motion to dismiss regarding Defendants' not actionable statements.

iii.  Materially False or Misleading Statements

Defendants argue that the alleged misstatements are not misleading as Qualcomm did not misrepresent the regulatory impediments of a deal. (Doc. No. 57-1 at 21.) To allege an actionable false or misleading statement, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, ... state

with particularity all facts on which that belief is formed." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012) (quoting 15 U.S.C. § 78u-4(b)(1)). This is a demanding standard, requiring a plaintiff to allege with specificity "contemporaneous statements or conditions," *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001), that demonstrate both "how and why the statements were false" when made, *Metzler*, 540 F.3d 1049, 1071–72 (9th Cir. 2008).

### a. Disclosure of the Voluntary Notice to CFIUS

Plaintiffs assert that the market was misled when Qualcomm repeatedly stated that it was ready to meet with Broadcom in an attempt to reach a negotiated deal, meanwhile Qualcomm was engaged in discussions with CIFUS. (Doc. No. 63 at 20.) "Rule 10b-5 and Section 14(e) in terms prohibit *only* misleading and untrue statements, not statements that are incomplete … Often, a statement will not mislead even if it is incomplete or does not include all relevant facts." *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (emphasis in original). "To be actionable under the securities laws, an omission must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* (citing *McCormick v. The Fund American Cos.*, 26 F.3d 869, 880 (9th Cir. 1994)). Here, it is not in dispute that Qualcomm did not disclose to investors that it was working with CFIUS. Plaintiffs assert that by not disclosing this fact Plaintiffs could not evaluate the appropriate risk of this transaction being blocked by CFIUS as it was concealed. (Doc. No. 63 at 21.) Defendants contend that the possibility was always present, and Qualcomm warned of the risk before the class period. (Doc. No. 57-1 at 23.) Therefore, Qualcomm argues that the statements were not misleading because they were entirely consistent with Qualcomm having asked CFIUS to investigate the national security implications. (*Id.*)

Defendants disclosed that this transaction "may well result in significant national security concerns that could potentially block the transaction. Therefore, we believe approval by CFIUS is far from assured." (Doc. No. 57-1 at 14.) However, at this stage of the litigation, Plaintiffs have alleged that Qualcomm's statements may have been

misleading as they failed to disclose that they were actively engaged in discussions with CFIUS. This plausibly could have resulted in the market evaluating a greater risk of CFIUS blocking this transaction rather than the normal low risk that CFIUS would block a transaction.

### b. *Openness Comments Regarding Negotiations*

Plaintiffs argue that Defendants engaged in a scheme to mislead by creating the impression that Qualcomm was genuinely open to the merger negotiation and publicly focusing on price and antitrust risks, while Qualcomm had initiated a CFIUS review. (Doc. No. 63 at 23.) Again, at this stage, Plaintiffs have sufficiently alleged that Qualcomm engaged in a fraudulent scheme. Here, Qualcomm filed a CFIUS notice unilaterally. While a CFIUS review itself does not mean a deal will be halted, it is unusual for a company to unilaterally file a CFIUS notice. Further, by the filing the notice unilaterally and failing to disclose this action to investors, Plaintiffs have adequately pled a theory of a scheme to mislead.

Defendants state that they were seeking to gain insight as to whether CFIUS clearance would be a problem before getting too far down the road. However, this is a factual dispute. At this stage, the Court must accept Plaintiffs' allegations as true and viewed in the light most favorable to Plaintiffs. *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). A factual dispute is appropriate at summary judgment or trial. *See id.*

Further, Defendants assert that Plaintiffs cannot establish scheme liability because it is based off the same alleged misstatements as described above. However, Plaintiffs have adequately pled a different theory. The fact that Defendants could not have been engaging in genuine negotiation talks with Broadcom as it had initiated CFIUS review is a different theory than releasing misleading statements to investors. Accordingly, it is not just a simply repackaging of the alleged misstatements.

Accordingly, the Court **DENIES** Defendants' motion to dismiss based failure to plead on misleading statements.

///

### iv. Scienter

"Scienter is [the] essential element of a § 10(b) claim." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1032 (9th Cir. 2002). The Supreme Court has explained that scienter for purposes of Section 10(b) and Rule 10b–5 is "the defendant's intention to deceive, manipulate or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 308 (2007). The complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)). This means a plaintiff "must provide, in great detail, all the relevant facts forming the basis of her belief" that the defendant has acted with "deliberate recklessness or intent." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). A "strong inference" is one that a reasonable person would deem "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. When analyzing the sufficiency of a plaintiff's scienter pleadings, the Court must "determine whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter." *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011). "[I]f no individual allegation is sufficient, we conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id.*

Here, Plaintiffs contend that Defendants Mollenkopf, Jacobs, Rosenberg and Horton knew about the effort to get CFIUS to preemptively block the deal and therefore, made their statements with intent to deceive. However, Plaintiffs' arguments regarding scienter misstate the law and whether Defendants knew of the CFIUS filing is not an issue. Rather, the issue is whether Defendants knew their statements were false or misleading. *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d at 883 (knowledge of a fact is insufficient to establish scienter without allegations that defendants "believed that they made false or misleading statements"). There are no allegations in the complaint supporting the suggestion that Defendants believed their statements were false or misleading.

Defendant Rosenberg made the following statement: "The Broadcom-proposed acquisition will be subjected to very, very close scrutiny by well over a dozen potential agencies. We believe that this is probably going to take something in the range of 18 months or more even …" (Doc. No. 50 ¶ 195.) Defendant Mollenkopf mentioned that "there are some questions about deal certainty and regulatory approval." (*Id.* ¶ 121.) Defendant Rosenberg discussed possible review by regulatory agencies that could take time to resolve "because of the complexity of the two companies' businesses, because of the enormous overlap in the two companies' technologies and businesses, and because of the global nature of our business." (*Id.*) Here, there is an opposing inference that Defendants did not think that disclosure was required. This inference is shown by the fact that Qualcomm did disclose several warnings regarding the CFIUS risk. The allegations in the complaint simply do not adequately allege an inference of scienter.

Finally, Plaintiffs claim that these allegations of motive are extremely important. However, "motive and opportunity" is simply inadequate to establish scienter. *Rubke v. Capitola Bancorp Ltd.*, 551 F.3d 1156, 1166 (9th Cir. 2009).

Accordingly, the Court **GRANTS** Defendants' motion to dismiss regarding the element of scienter.

v. Loss Causation

Even when deceptive conduct is properly pled, a securities fraud complaint must also adequately plead "loss causation." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 807 (2011). Loss causation is shorthand for the requirement that "investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss." *Id.* Thus, like a plaintiff claiming deceit at common law, the plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event. *Dura*, 544 U.S. at 343–44. The burden of pleading loss causation is typically satisfied by allegations that the defendant revealed the truth through "corrective disclosures" which "caused the company's stock price to drop and investors to lose money." *Halliburton*, 573 U.S. at 264.

Plaintiffs contend that on March 5, 2018, the market learned that Qualcomm had been working with CFIUS to preemptively block the deal. (Doc. No. 50 ¶ 233.) Plaintiffs assert that on March 6, 2018, Qualcomm disclosed CFIUS' March 5, 2018 letter that stated Qualcomm had provided unilateral voluntary notice on January 29, 2018 as well as follow-up responses to questions and information provided by both Qualcomm and Broadcom. (*Id.* ¶ 236.) Then on March 12, 2018, the market learned that the President blocked the deal. (*Id.* ¶ 181.) On March 5, 2018, Qualcomm's stock dropped by 1.13% and on March 6, 2018, the stock fell by 2.92%. (*Id.* ¶ 239.) On March 13, 2018, the stock dropped by 4.95%. (*Id.* ¶ 184.)

Plaintiffs allege that loss causation is adequately pled where the stock price fell over two days following corrective disclosure. *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1227 (N.D. Cal. 2015). However, the stocks at issue in *Montage* fell over 25% in two days. *Id.* Here, Qualcomm's stocks dropped 4.02% in two days. To plausibly plead loss causation, a complaint must allege that a company's "share price fell significantly after the truth became known." *Dura*, 544 U.S. at 347; *Metzler*, 540 F.3d at 1062–63. Further, securities complaints tend to be predicated on double digit declines. *Eng v. Edison Int'l*, No. 15-CV-1478-BEN-KSC, 2017 WL 1857243, at *4 (S.D. Cal. May 5, 2017) (collecting cases). Here, the stock drops on March 5 and 6, 2018 were minimal. Furthermore, there is a more plausible explanation that the market reacted to CFIUS' action and not that Qualcomm had provided notice to CFIUS. *See Metzler*, 540 F.3d at 1064–65 (rejecting loss causation theory in favor of "far more plausible" explanation; noting that "while the court assumes that the facts in a complaint are true, it is not required to indulge unwarranted inferences in order to save a complaint from dismissal").

On March 12, 2018, the President blocked this deal. Loss causation requires a plaintiff to "demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016). It is quite evident that the stock drop on March 13, 2018 was connected to the President's order rather than a misrepresentation by Qualcomm.

Accordingly, Plaintiffs cannot establish loss causation based on an intervening event.

Thus, the Court **GRANTS** Defendants' motion to dismiss regarding loss causation.

vi.  Section 20(a)

Section 20(a) imposes liability on control persons. 15 U.S.C. § 78t(a). "To establish liability under Section 20(a), a plaintiff must first prove a primary violation of Section 10(b) or Rule 10b-5." Kelly, 71 F. Supp. 3d at 1068. Since Plaintiffs have not pled a violation of Section 10(b), their Section 20(a) claim has also not been adequately established. Accordingly, the Court **GRANTS** Defendants' motion to dismiss regarding Section 20(a).

## V. CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss. Plaintiffs must file a Second Amended Complaint by **April 6, 2020**.

**IT IS SO ORDERED.**

Dated:  March 10, 2020

Hon. Anthony J. Battaglia
United States District Judge